## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RON DANIEL UNDERDONK                                 CIVIL ACTION

VERSUS                                               NO.  16-55

DARREL VANNOY, WARDEN                                SECTION "R"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Ron Daniel Underdonk, is incarcerated in the Dixon Correctional Center in Jackson, Louisiana.[2]  On June 7, 2007, Underdonk was charged by bill of

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Petitioner's location was obtained from the Offender Locator system for the Louisiana Department of Corrections using his assigned inmate number.

information in Terrebonne Parish with one count of attempted aggravated rape and one count of aggravated kidnapping.[3]   An amended bill of information was filed on December 15, 2009, asserting the same charges and including additional aggravating factors for the attempted aggravated rape.[4]  The Louisiana First Circuit Court of Appeal summarized the facts determined at trial as follows in relevant part:[5]

> At trial, the victim, O.N. testified that around 7:00 a.m. on May 8, 2007, she was working at the S & T Food Mart on Grand Caillou Road in Houma when defendant entered to purchase a bottle of water. O.N. recognized defendant as a regular customer who normally pulled up to the store in a silver Ford Expedition with loud music emitting from his vehicle. O.N. asked defendant why he had come into the store so early, and defendant responded that he had been up all night because he had gone to Morgan City to get a tattoo. Defendant left the store after buying his bottle of water.
>
> Approximately ten minutes later, defendant reentered the store and asked O.N. whether she wanted to see his tattoo, indicating that it was by his penis. O.N. said that she did not want to see defendant's tattoo, but defendant then stated that he was just joking about his tattoo being by his penis, and defendant asked O.N. to come around the counter to see his actual tattoo. As O.N. rounded the counter, defendant punched her in her head, and O.N. fell to the ground. Defendant dragged O.N. a short distance to a room in the back of the store and attempted to close the door, but was unsuccessful due to several boxes blocking the way. O.N. struggled to free herself from defendant and repeatedly asked him to stop, but O.N. testified that defendant kept punching her. As O.N. continued to struggle with defendant, defendant opened an exterior door leading to the rear of the store, and he dragged O.N. outside. Defendant dragged O.N. behind the S & T Food Mart and through an unlocked fence that bordered an abandoned Delchamps supermarket. Upon reaching the back of the Delchamps, defendant held O.N. in a bear hug with her arms immobilized and with O.N.'s back facing defendant's front. According to O.N., defendant then

---

[3]St. Rec. Vol. 1 of 4, Bill of Information, 6/7/07.

[4]St. Rec. Vol. 1 of 4, Bill of Information, 12/15/09.

[5]In accordance with La. Rev. Stat. § 46:1844(W), the Louisiana First Circuit referred to her initials.  I will continued to do so in the report.

began trying to undress her by grasping at the button and zipper of her jeans. Defendant also placed his hands over O.N.'s jeans and touched her private area. Eventually, defendant released O.N. from his grasp and told her that she could leave. According to O.N. defendant never succeeded in undressing her or placing any part of his body in her pants, but he did unbutton her pants. After she was released, O.N. witnessed defendant begin to walk to his car, which he had parked in an alley behind the Delchamps, and she ran around to the front of her store to ask for help. O.N. reentered the S & T Food Mart through its front door to retrieve her cell phone, which she then used to call 911. Surveillance video from the S & T Mart indicates that this entire incident took place in the span of about one minute and forty seconds.

State v. Underdonk, 92 So.3d 369, 372-73 (La. App. 1st Cir. 2012); State Record Volume 2 of 4, Louisiana First Circuit Opinion, 2011-KA-1598, pages 3-6, March 23, 2012.

Underdonk was tried before a jury on December 15 and 16, 2009, and found guilty of attempted aggravated rape and the lesser offense of second degree kidnapping.[6]  The state trial court sentenced Underdonk on February 8, 2010, to ten (10) years in prison for attempted aggravated rape without benefit of parole, probation or suspension of sentence and five (5) years in prison at hard labor for second degree kidnapping, with the first two years to be served without benefit of parole, probation, or suspension of sentence.[7]

---

[6]St. Rec. Vol. 1 of 4, Trial Minutes, 12/15/09; Trial Minutes, 12/16/09; Jury Verdict (Count 1), 12/16/09; Jury Verdict (Count 2), 12/16/09; Trial Transcript Excerpt, 12/16/09; St. Rec. Vol. 3 of 4, Trial Transcript, 12/15-16/09.

[7]St. Rec. Vol. 2 of 4, Sentencing Transcript, pp. 3-4, 2/8/10.

The State filed a multiple bill that same day charging Underdonk as a third felony offender.[8]   At a hearing on September 22, 2010, the state trial court adjudicated Underdonk a third felony offender.[9]   On December 13, 2010, the court vacated the original sentences and resentenced Underdonk as a third felony offender for attempted aggravated rape to "33.33 years" in prison at hard labor without benefit of parole, probation or suspension of sentence and for second degree kidnapping to "26.67 years" in prison at hard labor without benefit of probation or suspension of sentence.[10]   The court also denied Underdonk's oral motion to reconsider the sentences.[11]

On direct appeal to the Louisiana First Circuit, Underdonk's retained counsel asserted three errors:[12] (1) The evidence was insufficient to prove guilt beyond a reasonable doubt. (2) The sentences imposed were excessive and unconstitutionally imposed. (3) The verdicts were improper under La. Code Crim. P. art. 782.

On its review for errors in the record, the Louisiana First Circuit determined that Underdonk should have been charged with aggravated kidnapping by grand jury

---

[8]St. Rec. Vol. 1 of 4, Multiple Bill, 2/8/10.

[9]St. Rec. Vol. 1 of 4, Hearing Minutes, 9/22/10; St. Rec. Vol. 2 of 4, Hearing Transcript, 9/22/10.

[10]St. Rec. Vol. 2 of 4, Sentencing Minutes, 12/13/10; Sentencing Transcript, p. 6, 12/13/10; Reasons for Sentencing, 12/13/10.

[11]St. Rec. Vol. 2 of 4, Sentencing Minutes, 12/13/10; Sentencing Transcript, 12/13/10; see also, Motion to Reconsider Sentence, 12/20/10; Trial Court Order, 8/29/11.

[12]St. Rec. Vol. 2 of 4, Appeal Brief, 2011-KA-1598, 9/26/11.

indictment, not bill of information, under Louisiana law.[13]  The court therefore vacated the related conviction, multiple offender adjudication, and sentence for second degree kidnapping.  The court thereafter affirmed the attempted aggravated rape conviction and the multiple offender adjudication and sentence concerning that charge, finding no merit in the other claims.

The Louisiana Supreme Court denied Underdonk's related writ application on October 8, 2012, without stated reasons.[14]  His conviction became final ninety (90) days later, on Monday, January 7, 2013,[15] when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On September 19, 2013, Underdonk's counsel filed an application for post-conviction relief in the state trial court asserting two grounds for relief:[16] (1) He was denied effective assistance of counsel when trial counsel failed to subject the State's

---

[13]Underdonk, 92 So.3d at 369; St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2011-KA-1598, 3/23/12.

[14]State v. Underdonk, 98 So.3d 848 (La. 2012); St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2012-K-0910, 10/8/12.  The State did not provide the court with a copy of this writ application.  The court has obtained a copy directly from the clerk of the Louisiana Supreme Court, and it has been separately filed into the court's record.

[15]The period ended on Sunday, January 6, 2013, leaving the last day to fall to the next business day, Monday, January 7, 2013.  Fed. R. Civ. P. 6(a)(1)(C); La. Code Crim. P. art. 13.

[16]St. Rec. Vol. 2 of 4, Application for Post-Conviction Relief, 9/19/13.  Another copy of the application was faxed to the clerk of the state trial court on September 18, 2013.

case to meaningful, adversarial testing. (2) He was denied effective assistance of counsel when trial counsel failed to (a) present an adequate defense, (b) independently investigate the case, (c) call a key witness and (d) consult with petitioner on a critical aspect of the proceedings.  The State filed a written response in opposition to the application, arguing that Underdonk failed to establish a basis for relief under Strickland v. Washington, 466 U.S. 668 (1984).[17]  The state trial court held an evidentiary hearing on January 21, 2015, and denied the application as meritless, referencing the State's written arguments.[18]

The Louisiana First Circuit denied Underdonk's writ application on April 20, 2015, without stated reasons.[19]  The Louisiana Supreme Court denied Underdonk's related writ application on October 2, 2015, because he failed to show ineffective assistance of counsel under Strickland.[20]

## II.   FEDERAL HABEAS PETITION

On January 5, 2016, Underdonk's counsel filed a petition for federal habeas corpus relief in which he asserted the following grounds for relief:[21] (1) Trial counsel

---

[17]St. Rec. Vol. 2 of 4, Memorandum in Opposition, 12/9/13.

[18]St. Rec. Vol. 2 of 4, Hearing Transcript, 1/21/15.

[19]St. Rec. Vol. 2 of 4, 1st Cir. Order, 2015-KW-0317, 4/20/15; 1st Cir. Writ Application, 2015-KW-0317, 2/20/15.

[20]State v. Underdonk, 175 So.3d 395 (La. 2015) (per curiam); St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2015-KP-0901, 10/2/15.

[21]Rec. Doc. No. 1.

was ineffective in failing to (a) secure a key witness to testify at trial, (b) consult with the petitioner on a critical aspect in the proceedings, (c) present an adequate defense and (d) investigate the State's case. (2) His right to effective assistance of counsel was violated when trial counsel failed to subject the State's case to meaningful, adversarial testing. (3) The evidence was insufficient to sustain the conviction beyond a reasonable doubt. (4) The verdicts were illegal because they did not comply with La. Code Crim. P. 782. (5) His rights were violated by the appellate court's failure to vacate the conviction and sentence on attempted aggravated rape because the verdict was tainted by evidence of aggravated kidnapping. (6) His rights were violated by imposition of an excessive and disproportionate sentence.

The State filed an answer in response to Underdonk's petition in which it concedes that the federal petition is timely and that the claims were exhausted through available state court remedies. However, the State asserts that Underdonk's claims are procedurally barred from review pursuant to La. Code Crim. P. art. 930.4(A) because the claims were fully litigated on appeal in the state courts.[22]

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24,

---

[22]Rec. Doc. No. 7.

1996[23] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Underdonk's petition, which was filed by counsel on January 5, 2016.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Underdonk's petition is timely and exhausted. The State, however, urges that Underdonk's efforts to exhaust also have resulted in a procedural bar under La. Code Crim. P. art. 930.4(A).  While recognizing that the state courts addressed each claim on the merits, the State seeks to invoke a procedural bar never imposed or mentioned by any of the state courts.  The State appears to assert that, because Underdonk's claims were addressed by the state courts on appellate and supervisory review, he is barred from federal habeas review.  This is erroneous.

The case law is clear that La. Code Crim. P. art. 930.4(A), even when imposed by the state courts, does **not** bar federal review of a claim.  The Article 930.4(A) bar

---

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

only precludes Louisiana courts from review of post-conviction claims which were already "fully litigated" on direct appeal because such claims are neither new or different from claims previously litigated and resolved on appeal. Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994). Thus, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Id. A federal habeas court simply "look[s]-through" the ruling on collateral review and considers the reasons and findings in the direct appeal proceeding in which the claims were first litigated. Id., 41 F.3d at 1582-83.

No Louisiana court has applied La. Code Crim. P. art. 930.4(A), probably because Underdonk did not seek further review of claims asserted in his direct appeal. Thus, the state courts had no cause to mention the bar on post-conviction review of his other post-conviction claims. Article 930.4 is wholly irrelevant and inapplicable to Underdonk's claims in this court. The State's procedural bar defense is wholly unfounded.

IV.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State

9

court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact

and the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th

Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied,

531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001);

Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section

2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be

applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause

if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.      SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 3)

Underdonk alleges that the State failed to exclude every reasonable hypothesis of innocence because the evidence did not establish that he acted with the intent necessary to prove attempted aggravated rape.  He argues that he never admitted that he tried to rape the victim; he merely speculated that his actions would indicate that he tried.  He further argues that the circumstantial evidence in this case was insufficient to exclude all reasonable hypotheses of innocence, especially in light of the victim's inconsistent statements.

Underdonk presented this claim to the Louisiana First Circuit on direct appeal.  The court considered the claim under Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, and found that the evidence established Underdonk's guilt.  The appellate court held that the jury must have rejected Underdonk's apparent inability to remember, "[his] version of the events and his contention that he had no sexual intent toward O.N."[24]  This was the last reasoned opinion by a state court on this issue.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion.).

---

[24]Underdonk, 92 So.3d at 376; St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2011-KA-1598, p. 11, 3/23/12.

Under <u>Jackson</u>, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  <u>Jackson</u>, 443 U.S. at 319; <u>Williams v. Cain</u>, 408 F. App'x 817, 821 (5th Cir. 2011); <u>Perez v. Cain</u>, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  <u>Perez</u>, 529 F.3d at 594 (citing <u>Jackson</u>, 443 U. S. at 324 n. 16).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  <u>See</u> <u>McDaniel v. Brown</u>, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under <u>Jackson</u>); <u>Johnson v. Cain</u>, 347 F. App'x 89, 91 (5th Cir. 2009) (<u>Jackson</u> standard relies "upon the record evidence adduced at the trial") (quoting <u>Jackson</u>, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury.  <u>United States v. Young</u>, 107 F. App'x 442, 443 (5th Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993)); <u>see</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts").  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.  Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985).  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Underdonk bases his arguments principally on Louisiana law which allows for a crime to be proven by both direct and circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438.  However, on federal habeas corpus review, the court does **not** apply this state law "reasonable hypothesis" standard, and instead must apply Jackson. Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)).  To the extent petitioner relies on Louisiana's

circumstantial evidence rule itself, "[t]his is not a purely separate test from the <u>Jackson</u> standard to be applied instead of a sufficiency of the evidence test. . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under <u>Jackson</u> to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." <u>State v. Porretto</u>, 468 So.2d 1142, 1146 (La. 1985); <u>accord</u> <u>State v. Williams</u>, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." <u>State v. Maxie</u>, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); <u>accord</u> <u>Williams</u>, 693 So.2d at 208.

The appropriate standard for this court remains <u>Jackson</u> as applied under the parameters of the AEDPA. The state court applied the appropriate federal constitutional standard and reached a result fully consistent with Supreme Court precedent.

Underdonk was charged with and convicted of attempted aggravated rape. Aggravated rape was defined in relevant part at the time by La. Rev. Stat. § 14:42 as anal, oral, or vaginal sexual intercourse with a person without that person's lawful consent, and when the victim resists the act to the utmost, but the resistance is overcome by force, or when the victim is prevented from resisting the acts by threats of great and immediate bodily harm, accompanied by apparent power of execution. <u>State v. German</u>, 133 So.3d 179, 191 (La. App. 4th Cir. 2014). A perpetrator has attempted aggravated rape when, with specific intent to do so, he commits an act for the purposes of and tending directly to accomplish one or more of the prohibited acts of intercourse.

15

German, 133 So.2d at 191 (citing La. Rev. Stat. § 14:27).  "Even in the absence of physical evidence, a victim's testimony establishing all of the required elements of the offense of attempted aggravated rape can be sufficient to support a conviction."  Id. (citing State v. Carney, 476 So.2d 364, 368-69 (La. App. 4th Cir. 1985)).

Louisiana law defines specific intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  La. Rev. Stat. § 14:10(1).  Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); State v. Tate, 851 So.2d at 930 (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987)).  The existence of specific intent is a conclusion to be resolved by the trier of fact.  State v. Alexander, 182 So.3d 126, 130 (La. App. 1st Cir. 2015).  Thus, under Louisiana law, an offender who has the specific intent to commit a rape by threatening or forcing his victim into submission and who does an act in furtherance of his goal has attempted the rape, even if his victim successfully repels the threats or force.  Alexander, 182 So.3d at 131.

The evidence at Underdonk's trial established that, after a night out using drugs and alcohol, he purchased a bottle of water from the victim at the S & T Foodmart and

left the store.[25]   He was a regular customer at the store and known to the victim by name.

After moving his car to a parking spot at the back of the store, he reentered the store and prompted the victim to view his new tattoo, which he first claimed was near his penis.[26]   After she declined, he told her the tattoo was elsewhere on his body and encouraged her to approach him to see it.[27]   When the victim walked from behind the counter, Underdonk hit her on the head, knocking her to the floor.[28]   Underdonk then dragged the victim to a back room but could not close the door.[29]   He continued to hit her during her struggle in the store to get free.[30]   Underdonk then unlocked the back door of the store and dragged the victim outside to the yard of an abandoned grocery store next door.[31]   The victim lost her shoes along the way.[32]   Underdonk then held her in a "bear hug" from behind and began trying to unbutton her pants.[33]   Underdonk put

---

[25]St. Rec. Vol. 3 of 4, Trial Transcript, p. 286 (O.N.), 12/16/09.

[26]Id., at p. 287 (O.N.).

[27]Id., at p. 287 (O.N.).

[28]Id., at pp. 287-88 (O.N.), 368, 371 (Underdonk).

[29]Id., at pp. 288-89, 295-96 (O.N.).

[30]Id., at pp. 288-89 (O.N.).

[31]Id., at pp. 289-90 (O.N.).

[32]Id., at p.  290, 296 (O.N.).

[33]Id., at pp. 290, 291 (O.N.).

his hands on her private parts over the jeans, but did not put his hands into her pants.[34] Although Underdonk managed to unbutton the pants, he suddenly released her and told her she could leave.[35]  She ran to the front of the store searching for help from other customers.  She soon entered the store through the front door to call 911, an action recorded on the store's video surveillance.[36]

When Underdonk was questioned by police, he acknowledged that he hit the victim at the store, but claimed he remembered nothing after that, except exiting the store through the backdoor.[37]  He later told officers he was starting to remember details.[38]  These details included hitting the victim and struggling with her in the back parking lot.[39]  He also speculated that that he was going to rape her, but he could not recall the details of what he was going to do.[40]  He also admitted that he struggled with the victim trying to get out of the back door of the store.[41]

---

[34]Id., at p. 291 (O.N.).

[35]Id., at p. 290 (O.N.).

[36]Id., at p. 290 (O.N.).

[37]Id., at pp. 338-39, 342 (Officer Kazusky), pp. 369, 371 (Underdonk).

[38]Id., at p. 343 (Officer Kazusky).

[39]Id., at p. 343 (Officer Kazusky).

[40]Id., at p. 344 (Officer Kazusky).

[41]Id., at pp. 369, 378, 379-80 (Underdonk).

The jury was shown pictures of injuries to the victim's knees, forehead, chin and lips, and heard testimony that her teeth were broken by Underdonk's punches.[42]  The victim testified that she was taken to the hospital by ambulance after the incident and had her teeth repaired a few days later.[43]  The jury also saw pictures of items that fell to the floor during the struggle in and out of the store.[44]  The jury also was shown Underdonk's wedding ring and a picture of where the ring was found outside of the store in the same area where the victim said she was taken.[45]  A video of the initial incident in the store was played for the jury.[46]

Thus, the jury saw and heard evidence more than sufficient to conclude that Underdonk repeatedly hit the victim, dragged her into a backroom of the store, struggled with her, pulled her out of the backdoor of the store, restrained her from behind, fondled her above her jeans, and undid the button of her jeans before suddenly releasing her.  A rational trier of fact, after hearing and viewing the evidence in the light most favorable to the prosecution, could readily find beyond a reasonable doubt that Underdonk had the specific intent to commit rape, took actions towards accomplishing that crime and

---

[42]Id., at pp. 296, 307-09 (O.N.).

[43]Id., at pp. 297, 309-10, 312-13 (O.N.).

[44]Id., at pp. 295, 305-07 (O.N.).

[45]Id., at pp. 329-30 (Officer Kazusky).

[46]Id., at pp. 298, 302-03 (O.N.).

that the victim's efforts to resist him were thwarted by his actions to injure and restrain her.

The jury acted well within its discretion as factfinder to make credibility determinations to believe the victim's account of the events and disregard Underdonk's assertions that he had no memory of the events after he hit her and when he exited the backdoor of the store to return to his parked car, which he had secreted from view behind the store.  The jury simply did not believe the defense theories and arguments in reaching its guilty verdict, which is properly supported by the evidence.  It is not for this court on federal habeas review to reevaluate witness credibility and evidence or substitute its judgment concerning credibility for the jury's, as Underdonk now asks the court to do.  The state courts' rejection of Underdonk's insufficient evidence claim was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this issue.

## VI.   EFFECTIVE ASSISTANCE OF COUNSEL (CLAIMS NOS. 1 AND 2)

Underdonk asserts that his retained trial counsel was ineffective on several grounds, including failure to secure a key witness to testify at trial, consult with him on a critical aspect in the proceedings, investigate and present an adequate defense, and subject the State's case to a meaningful, adversarial test.  Underdonk specifically argues that trial counsel unduly prejudiced the defense when he read the police report of Officer Brad Cadiere into the record rather than demand live testimony from the officer, who was not available on the day of trial.  He argues that the officer's testimony and further

questioning of him at trial would have countered the victim's pretrial statements and trial testimony regarding the alleged struggle outside of the store, i.e., the act towards commission of the rape, none of which was mentioned in the officer's report. Underdonk also argues that trial counsel did not consult with him before entering into the stipulation to rely on and read Officer Cadiere's report in lieu of his live testimony. Underdonk contends that, based on Officer Cadiere's demeanor at the post-conviction evidentiary hearing, he would have been an impressive witness in person at trial to persuade the jury to disbelieve the victim as having given inconsistent statements.

Underdonk asserted these same arguments on post-conviction review in the state trial court.  The court held a full evidentiary hearing at which Underdonk's trial counsel and Officer Cadiere testified.  The state trial court denied relief, referencing Strickland v. Washington, 466 U.S. 668 (1984), and related state case law as briefed by the State. In doing so, the court indicated that Underdonk had failed to establish entitlement to relief based on the trial decisions made by his counsel.

On review of that ruling, the Louisiana First Circuit denied relief without stated reasons. The Louisiana Supreme Court also denied Underdonk's related writ application, stating that he failed to show ineffective assistance of counsel under Strickland.  This was the last reasoned opinion on the issue.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); French v. Jones, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir.

Jul. 18, 2000) (Table, Text in Westlaw) (addressing <u>Cronic</u>, <u>infra</u>.).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

A.   <u>The Cronic Standard of Review is Inapplicable</u>

Citing <u>United States v. Cronic</u>, 466 U.S. 648 (1984), and related case law, Underdonk asserts that his trial counsel failed to put the State's case to a meaningful adversarial test when counsel relied on Officer Cadiere's report in lieu of his live testimony, thereby missing an opportunity to challenge the veracity of the victim's statements and testimony.  Underdonk's allegations reflect that his Sixth Amendment claims of ineffective assistance of counsel arise solely from his trial counsel's reliance on the Cadiere's report in lieu of live testimony.  This specific alleged error by counsel is insufficient to support a claim under <u>Cronic</u>.

The Supreme Court has recognized that "[i]n certain Sixth Amendment contexts, prejudice is presumed."  <u>Strickland</u>, 466 U.S. at 692.  In this category, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."  <u>Id</u>. at 692 (citing <u>Cronic</u>, 466 U.S. at 659 & n.25).

In <u>Cronic</u>, the Supreme Court held that a defendant may be constructively denied counsel, even though he is represented by an attorney.  The <u>Cronic</u> Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding.  <u>Cronic</u>, 466 U.S. at 654 n. 11.  The <u>Cronic</u> presumption of prejudice arises in circumstances

where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not." Cronic, 466 U.S. at 658-59 (citations omitted).  Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found. Mickens v. Taylor, 535 U.S. 162, 166 (2002).

The Supreme Court has also emphasized that for Cronic to apply, "the attorney's failure must be complete." Bell v. Cone, 535 U.S. 685, 697 (2002).  "For purposes of distinguishing between the rule of Strickland and that of Cronic," the Supreme Court held that a case does not come under Cronic merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. Bell, 535 U.S. at 697.  The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." Bell, 535 U.S. at 697.  Thus, the Cronic standard applies only when counsel has entirely failed to challenge the prosecution's case. Id. at 697;  Riddle v. Cockrell, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); Mayo v. Cockrell, 287 F.3d 336, 340 n.3 (5th Cir. 2002); Burdine v. Johnson, 262 F.3d 336, 344 n.4 (5th Cir. 2001).

The petitioner has the burden to show that he was constructively denied counsel. Childress v. Johnson, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997). "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel. Bad lawyering, regardless of how bad, does not support the [per se] presumption of prejudice." Johnson v. Cockrell, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing Jackson v. Johnson, 150 F.3d 520, 525 (5th Cir. 1998) (quoting Childress, 103 F.3d at 1228-29).

In this case, no matter how it is framed, Underdonk asserts that the significant flaw in trial counsel's performance was when counsel relied on Officer Cadiere's report in lieu of live testimony from that single witness. As the record proved to the state courts, Underdonk's trial counsel was well prepared for trial and engaged in meaningful cross-examination of the victim and other State witnesses. Except for the one alleged error in not pursuing Cadiere's live testimony, Underdonk offers no showing of a "complete" failure of representation as addressed in Cronic and its progeny. For this reason, the appropriate standard of review is Strickland, the case relied upon by the state courts in addressing his claims. Johnson v. Cockrell, 301 F.3d at 238 (applying Strickland and not Cronic to ineffective assistance claim that counsel erred in cross-examining one witness); Norris v. Stephens, No. 12-cv-3645, 2015 WL 1459187, at *17 (S.D. Tex. Mar. 28, 2015) ("Because Norris' counsel presented evidence, cross-examined adverse witnesses, raised objections, and generally tested the State's case,

Norris' ineffective assistance of counsel claims are reviewed under the <u>Strickland</u> standard.")

B.   <u>The Strickland Standard</u>

The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland</u>, 466 U.S. at 668, relied on by the state courts, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  <u>Strickland</u>, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  <u>Id.</u> at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive <u>Strickland</u> standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  <u>Kimler</u>, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under <u>Strickland</u>, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693); <u>Harrington v. Richter</u>, 562 U.S. 86, 112 (2011)

(Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).  This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Id., 466 U.S. at 689; Geiger v. Cain,

540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d 230, 236-37 (5th Cir. 2002); Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

Underdonk asserts that his trial counsel was ineffective in failing to call Officer Cadiere in person to use both his live testimony and his report to challenge the victim's credibility before the jury. At the state post-conviction evidentiary hearing, Underdonk's trial counsel testified that the main theory of the defense was that Underdonk was "over-billed" and that at most the evidence showed that a battery occurred, since he admittedly hit the victim at the counter.[47]

---

[47] St. Rec. Vol. 2 of 4, Hearing Transcript, p. 7, 1/21/15.

Trial counsel recalled that, in preparing for trial, he subpoenaed three defense witnesses for trial based on discussions with Underdonk.[48] He recalled that Underdonk made the decision not to call at least one of the witnesses and was consulted even during trial about who would actually be called to testify.[49] He also stated that his normal practice would have been to consult with his client before and during trial about which witnesses to present and any significant decision related to the trial.[50] Trial counsel testified that he knew that the victim's various statements had inconsistencies, including one statement lacking any reference to an attempted rape.[51] He recalled that Officer Cadiere, who wrote that report, was attending a funeral on the day of trial.[52] As a result, a stipulation was entered with regard to his testimony and the report.[53] Trial counsel testified that his normal practice would have been to consult with his client before making such a decision, but he had no recollection or notes regarding whether he spoke to Underdonk when making the mid-trial decision to enter into the stipulation and rely

---

[48]Id., at p. 8.

[49]Id., at p. 8.

[50] Id., at p. 9.

[51]Id., at pp. 6-7.

[52]Id., at p. 10.

[53]Id., at p. 10.

on the report.[54]  He also recalled that Underdonk disfavored seeking a continuance of the trial because he wanted the matter to move forward, hoping he could get out of jail.[55]

While trial counsel recognized the value in having live testimony, he was pleased that he (rather than the prosecutor) was allowed to read the report to the jury, which allowed him to emphasize the inconsistent portions compared to the victim's allegations.[56]  He felt that he had a tactical advantage in reading the report to the jury, because the prosecutor could not cross-examine the officer about matters left out of the report.[57]

Officer Cadiere testified at the post-conviction hearing that when he was called to the scene, he did not technically interview the victim.[58]  Instead, he was there to obtain a description of the suspect and a brief description of what happened.[59]  He did not question the victim or ask her about what happened.[60]  He recalled that the victim said she had been punched several times and dragged out the backdoor or toward the

---

[54]Id., at pp. 11, 15.

[55]Id., at p. 12.

[56]Id., at pp. 13-14.

[57]Id., at pp. 16-17.

[58]Id., at p. 20.

[59]Id., at p. 20.

[60]Id., at pp. 20, 21.

backdoor.[61]  He indicated that it would be the job of the detectives to question the victim about the details of the incident at a later time.[62]  He further recalled that the victim "appeared very frightened, shaken up, she was crying" and was "absolutely not" in a state to give a detailed statement at that point.[63]  Officer Cadiere testified that he knew from the dispatch that the victim had reported an attempted rape, and he saw no need to review that while she was in that condition.[64]  He did not recall that the victim mentioned being dragged outside the store.[65]  His main concern at the time was to get information to locate the perpetrator.[66]

The record, especially the trial and evidentiary hearing transcripts, reflect that Underdonk's counsel was well prepared for trial, extremely familiar with the details of the case and more than adequately cross-examined the victim and the State's witnesses. Contrary to Underdonk's contentions, his trial counsel used the victim's statements to police in his cross-examination, including the report made by Officer Cadiere.[67]  Trial

---

[61]Id., at p. 21.

[62]Id., at p. 23.

[63]Id., at p. 22.

[64]Id., at p. 22.

[65]Id., at p. 25.

[66]Id., at pp. 22-23.

[67]See e.g., St. Rec. Vol. 3 of 4, Trial Transcript, pp. 315, 316, 320-21,

counsel specifically questioned the victim about the fact that Officer Cadiere's report indicated that she broke away from Underdonk at the back door of the store.[68]

Trial counsel's testimony contradicts Underdonk's conclusory assertion that he was not consulted on crucial points at trial. The transcript reflects that Officer Cadiere's absence from trial for his grandmother's funeral repeatedly was brought up in open court and was the subject of at least one off-the-record conversation with the court. No indication of discord between Underdonk and his counsel over the decision appears in the transcript.

After lunch on the second day of trial, the State rested its case in chief. At that time, trial counsel explained to the court that his next witness, Officer Cadiere, was still at the funeral.[69] The prosecutor indicated that he would try to get Officer Cadiere, but that the funeral was ongoing throughout the afternoon.[70] The court advised the jury that the witness was attending his grandmother's funeral, excused them and recessed while the matter was sorted out.[71]

Trial counsel proceeded to call Underdonk and another witness to the stand. When the time came for defense counsel to call Officer Cadiere as the last witness, the court recessed again and conducted an off-the-record conference with counsel in the

---

[68] Id., at p. 321-22.

[69] Id., at p. 363.

[70] Id., at p. 364.

[71] Id., at p. 364.

courtroom.[72]   The court advised the jury that Cadiere's grandmother died and "[t]he funeral was this afternoon and the burial was at a different place other than the funeral home, and he's really in no shape to testify in court."[73]   The court then announced the parties' stipulation to read the report into the record.[74]   Underdonk's trial counsel then read the entire report to the jury, including that portion in which the officer wrote that the victim said she broke free from Underdonk at the back door of the store.[75]

The prosecutor recalled the victim to the stand in an effort to rebut the statement in Officer Cadiere's report and the alleged incomplete recitation of facts in her other typed statement to police.[76]   This provided defense counsel another opportunity to cross-examine the victim about the inconsistencies in the report, her statement to police and her trial testimony, focused in part on the struggle at the back door.

The record contains no indication that Underdonk opposed the use of Cadiere's report at trial in lieu of his live testimony.  Although he claims that he was not consulted, the record indicates that he was present in the courtroom when the matter was discussed with the court, when the court introduced the stipulation to the jury and when counsel read the report into the record.   Based on the testimony at the state post-conviction

---

[72]Id., at p. 392.

[73]Id., at p. 394.

[74]Id., at p. 394.

[75]Id., at p. 395-396.

[76]Id., at p. 397.

hearing, his trial counsel undisputedly consulted him during trial preparation and on other matters, including witness testimony, during trial.  Trial counsel testified that it was his normal procedure to consult his clients during trial about matters of this magnitude.  Underdonk did not present testimony, affidavits or other proof to support his speculative and conclusory assertion that counsel failed to consult him on the use of Officer Cadiere's report at trial.

In addition, trial counsel's decision to rely on the report in lieu of live testimony was a reasonable, strategic decision.  This type of "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  Richards v. Quarterman, 566 F.3d 553, 564 (5th Cir. 2009).  In this case, counsel's strategy was not ill chosen and did not render the trial unfair.

On the contrary, as counsel testified at the state post-conviction hearing, the use of the report gave the defense an important tactical advantage.  The State was prevented from cross-examining Officer Cadiere about the contents and accuracy of his report.  Officer Cadiere's testimony at the state post-conviction hearing was that his report was not written to obtain the facts about the incident, but instead was intended only to obtain information about the identity and location of the perpetrator.  The fact that Officer Cadiere was not trying to take accurate or detailed notes about the incident itself would have undermined defense efforts to prove at trial that the victim failed to report the attempted rape and outdoor struggle.

33

The record supports the state courts' conclusion that trial counsel did not act deficiently or otherwise prejudice the defense when he used Officer Cadiere's written report in lieu of live testimony.  The state courts' denial of relief was not contrary to or an unreasonable application of <u>Strickland</u>.  He is not entitled to relief on these claims.

VII.   <u>ILLEGAL VERDICT UNDER LA. CODE CRIM. P. ART. 782 (CLAIM NO. 4)</u>

Underdonk asserts that confusion caused by one juror's polling ballot for Count Two, aggravated kidnapping, rendered the verdicts for both counts infirm under La. Code Crim. P. art. 782(A), which requires that a guilty verdict be found by at least ten of the twelve jurors.  He asserted this claim on direct appeal to the Louisiana First Circuit.  The court found that there was no confusion as to the verdict on Count One, attempted aggravated rape, and any vote tally as to the second count was no longer relevant in light of their decision to vacate that verdict.  This was the last reasoned decision on that issue.

To the extent Underdonk bases his claim on state law, he is not entitled to federal habeas relief.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  <u>Wilkerson v. Whitley</u>, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); <u>see</u> <u>also</u> <u>Swarthout v. Cooke</u>, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); <u>accord</u> <u>Molo v. Johnson</u>, 207 F.3d 773, 776 n.9 (5th Cir. 2000); <u>Narvaiz v. Johnson</u>, 134 F.3d 688, 695 (5th Cir. 1998) (citing <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>West v. Johnson</u>, 92 F.3d 1385, 1404 (5th Cir. 1996)); <u>see</u>

also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). "Errors of state law and procedure ... are not cognizable unless they result in the violation of a federal constitutional right." Lee v. Whitley, No. 93-03791, 1994 WL 395071, at *3 (5th Cir. June 28, 1994) (holding that judge's purported violation of state law in failing to inform the petitioner of his right against self-incrimination in the habitual offender proceeding was not cognizable in a federal habeas corpus proceeding); see also Payne v. Whitley, No. 94-30101, 1995 WL 84049, at *2 (5th Cir. Feb. 6, 1995); Odom v. Wheat, No. 09-3028, 2009 WL 3199178, at *6 (E.D. La. Sept. 30, 2009) (order adopting report).

As to this claim, Underdonk has identified no violation of a federal constitutional right. He has established no error by the state trial court. Federal habeas relief is available only when an alleged state law error caused "prejudice of constitutional magnitude," such that the error "by itself so infected the entire trial that the resulting conviction violates due process." Galvan, 293 F.3d at 764-65 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)); Gilmore v. Taylor, 508 U.S. 333, 342-43 (1993). Without any demonstrated error, Underdonk is not entitled to relief.

To whatever extent he contends that the verdict created some undue fairness, such claims under the Due Process Clause present a mixed question of law and fact, Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000), which requires this court to determine whether the denial of relief on the issue was contrary to or an unreasonable application of a federal law. I find that it was not.

La. Code Crim. P. art. 782(A) permits conviction in a non-capital felony case like Underdonk's based on a vote of at least ten jurors out of twelve.  This rule is constitutional.  Apodaca v. Oregon, 406 U.S. 404 (1972); Johnson v. Louisiana, 406 U.S. 356 (1972).  Underdonk does not refute this conclusion and in fact relies on this rule to support his claim that the "confused" verdict on Count Two created an infirmity.

The Louisiana First Circuit held that there was no confusion as to the attempted aggravated rape charge verdict.  The record reflects that two issues occurred as to this verdict.

First, when the jury foreperson handwrote the guilty verdict for Count Two, she accidently wrote "guilty of secondary degree kidnapping."[77]  The state trial court sent the jury back to correct only the verdict form for Count Two, which was on a separate page from Count One.[78]  The foreperson's corrections are evident on the form in the record.[79]  When the jury returned with the properly written responsive verdict of second degree kidnapping, the jurors were individually polled by means of cards on which they answered as to their own verdict.[80]  The polling card of one juror had both "yes" and "no" crossed out in response to the question "Is this your verdict?" as to Count Two,

---

[77]Id., at p. 476.

[78]St. Rec. Vol. 1 of 4, Jury Verdict (Count 2), 12/16/09; Jury Verdict (Count 1), 12/16/09.

[79]Id.

[80]St. Rec. Vol. 3 of 4, Trial Transcript, p. 477-78, 12/16/09.

second degree kidnapping.[81]   The juror was brought into court and provided with another card.  Her choice of "yes" as to "guilty of second degree kidnapping" was confirmed, thus providing the court with a sufficient number of guilty votes, ten to two.[82]

The state trial court clarified the verdict on the second count with certainty. There was no confusion.  The record confirms that neither the state trial judge nor counsel had questions about the legality of the verdict as to Count One from its initial announcement through polling of the jurors.[83]  The record establishes that Count One verdict, attempted aggravated rape, was unanimous and never in doubt under La. Code Crim. P. art. 782(A).[84]

With no error for the court to assess, Underdonk has not established a due process violation or his entitlement to relief on this issue.  The state courts' denial of relief on this issue was neither contrary to nor an unreasonable application of federal law.

## VIII.   DUE PROCESS AND UPHOLDING THE VERDICT (CLAIM NO. 5)

Underdonk asserts that his constitutional rights were violated by the state appellate court's failure to vacate the conviction and sentence on the attempted aggravated rape charge, because the verdict was tainted by evidence presented as to the

---

[81]Id., at pp. 478-79.

[82]Id., at p. 480; St. Rec. Vol. 1 of 4, Trial Minutes, 12/16/09.

[83]See e.g., St. Rec. Vol. 3 of 4, Trial Transcript, pp. 476, 478-79, 12/16/09.

[84]St. Rec. Vol. 1 of 4, Trial Minutes, 12/16/09.

improperly charged aggravated kidnapping count.  Underdonk again relies on the claim that the victim gave inconsistent statements about the incident, and that the alleged evidence of her being dragged around or "forcibly seized and carried" inflamed the jury into finding that an attempted aggravated rape occurred.

In its sua sponte direct appeal review of the record for errors, the Louisiana First Circuit determined that the aggravated kidnapping charge had been improperly charged by bill of information rather than grand jury indictment.[85]  The court therefore vacated the second degree kidnapping conviction and the associated habitual offender adjudication and sentence.  In doing so, the court also considered whether its invalidation of the second degree kidnapping verdict required that it also vacate the attempted aggravated rape conviction.

Relying on State v. Donahue, 355 So.2d 247 (La. 1978), the court held that "if one count of a two-count indictment or information is invalid, only the defective count will be quashed or nullified."[86]  The court concluded that the evidence of aggravated kidnapping simultaneously presented to the jury did not so infect the properly charged and tried attempted aggravated rape count that it required reversal of that conviction. The court made the following findings:[87]

---

[85]Underdonk, 92 So.3d at 374; St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2011-KA-1598, p. 7, 3/23/12.

[86]Id.

[87]Id.

Here, the two crimes arose out of the same transaction, and facts as to each offense would have been admissible at trial of the other offense as part of the res gestae.  See Donahue, 355 So.2d at 250.  Thus, the instant situation is not one where the counts could not have been joined and where such misjoinder resulted in inherent prejudice to defendant on each charge.  See Donahue, 355 So.2d at 250; La. Code Crim. P. art. 493.

In this case, the State used evidence of defendant's attempted aggravated rape to try to support a conviction for aggravated kidnapping by arguing that defendant had attempted to secure something of value from O.N. (i.e., sexual gratification) to secure her release. However, the state's introduction of evidence related to the forcible seizing and carrying element of the aggravated kidnapping charge was equally relevant to the force element of attempted aggravated rape. Therefore, the state's introduction of evidence related to the aggravated kidnapping charge did not taint defendant's trial on his attempted aggravated rape charge because the same evidence was relevant for both offenses.

In the Louisiana Supreme Court, Underdonk asserted that the Louisiana First Circuit erred when it failed to vacate the attempted aggravated rape conviction.[88]  He argued that evidence of the kidnapping unfairly prejudiced him because the State used evidence of this other crime to bolster the evidence that an attempted aggravated rape occurred.  The Louisiana Supreme Court denied the writ application without comment, leaving the Louisiana First Circuit's opinion to stand as the last reasoned opinion on the issue.

As an initial matter, Underdonk has cited no Supreme Court precedent, and I can find none, requiring the state appellate court to vacate a valid conviction on one count

---

[88] See La. S. Ct. Writ Application, 12-K-0910, separately filed into the record.

after invalidating a separate count.  Such "prejudicial spillover"[89] from evidence introduced in support of a reversed count is not an issue that has been addressed by the United States Supreme Court.  Where there is no Supreme Court precedent to control a legal issue raised by a habeas petitioner, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, and no federal habeas relief is warranted.  See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008); Gomez v. Thaler, 526 F. App'x 355, 359-60 (5th Cir. 2013) (concluding that because no Supreme Court precedent had directly addressed the presented issue, it could not be said that the state court unreasonably applied clearly established federal law).

The "prejudicial spillover" theory has been recognized and addressed by lower federal courts in due process and fair trial terms, which are cognizable federal habeas claims under Supreme Court law.  The question of fundamental fairness at trial under the Due Process Clause presents a mixed question of law and fact.  Wilkerson, 233 F.3d at 890; see Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (prosecutorial misconduct is a mixed question of law and fact); Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997) (admissibility of evidence under the Due Process Clause is a mixed question of law and fact).  Thus, the court must determine whether the denial of relief by the state courts was contrary to or an unreasonable application of federal law.

---

[89]See United States v. Biyiklioglu, __ F. App'x __, 2016 WL 3345274, at *11 (5th Cir. Jun. 15, 2016).

"Prejudicial spillover" analysis applied by the lower federal courts provides that, to warrant a new trial on all counts, a defendant must show that he experienced undue prejudice as a result of evidence admitted to prove the invalid charge that would otherwise have been inadmissible to prove the valid charge.  United States v. Edwards, 303 F.3d 606, 640 (5th Cir. 2002).  This prejudice cannot be shown if the challenged evidence was relevant to the valid count and admissible on other theories.  Id.  Thus, defendant must "demonstrate both that the evidence was inadmissible and that it was prejudicial."  United States v. Arledge, 553 F.3d 881, 896 (5th Cir. 2008) (quotations and brackets omitted).  Under these standards, similar to the analysis used by the Louisiana First Circuit, Underdonk has not established that the evidence of "forcible seizing and carrying" related to the aggravated kidnapping was inadmissible or prejudicially impacted his trial on the attempted aggravated rape.

As discussed above, to prove the "aggravated" element of the attempted aggravated rape count as it was charged against Underdonk, the State was required to show that the victim either resisted the act and her resistance was overcome by force or she was prevented from resisting the acts by threats of great and immediate bodily harm, accompanied by apparent power of execution.  German, 133 So.3d at 191.  As the Louisiana First Circuit determined, the evidence presented by the State necessary to prove the aggravating factor established that the victim was unable to break free from Underdonk because he continually hit her, held her, and dragged her unwillingly through and from the store.  The testimony established that these controlling and

41

aggressive actions, and Underdonk's constant grip on the victim, prevented her from pulling away.  Even when they reached the outdoors, Underdonk held the victim in a "bear hug," preventing her from raising her arms or getting free while he attempted to unbutton her pants.

The admissibility of this evidence was not in question and it was relevant to the State's case on the attempted aggravated rape, not just the aggravated kidnapping. Underdonk has not shown that the evidence was inadmissible or irrelevant such to have prejudiced his trial.  He has therefore failed to establish a due process violation resulting from the Louisiana First Circuit's decision not to vacate his attempted aggravated rape conviction.  Underdonk fails to establish that the state courts' denial of relief on this issue was contrary to or an unreasonable application of clearly established Supreme Court or federal due process law.  He is not entitled to relief on this issue.

## IX.   MULTIPLE OFFENDER ADJUDICATION AND SENTENCE (CLAIM NO. 6)

Underdonk asserts that his sentence was excessive and disproportionate to the offense under Louisiana law.  He also contends that his sentence as a habitual offender was based on two predicate convictions that were not crimes of violence and which were the result of unconstitutional guilty pleas made after waiver of the right to counsel and without knowledge that the pleas could be used against him in a future multiple bill.  Thus, he argues his prior guilty pleas were insufficient to support the multiple offender adjudication and sentence.

Underdonk asserted these claims on direct appeal to the Louisiana First Circuit, which held that Underdonk failed to establish that the predicate offenses were infirm and that the evidence was sufficient to establish his habitual offender status.[90] The court also found that the sentence of 33.33 years for attempted aggravated rape was not excessive and represented the minimum sentence for a third offender. The court concluded that this minimum sentence was neither excessive nor disproportionate to the crime. This was the last reasoned opinion on the issue.

A.   Sufficiency of the Multiple Offender Evidence

Underdonk asserts that the evidence at his multiple offender hearing was insufficient because his prior guilty pleas were not constitutionally sound. Thus, the issue to be resolved is whether sufficient admissible evidence was submitted to the trial court to support a finding that Underdonk was a third felony offender.

To establish a claim in accordance with the Jackson standard, a petitioner must show that, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not find beyond a reasonable doubt that petitioner was a multiple offender. See George v. Cain, No. 08-5022, 2011 WL 1832823, at *5 (E.D. La. May 13, 2011) (Vance, J.) (applying the Jackson standard to the sufficiency of the evidence at a multiple offender proceeding). A claim of insufficient evidence presents a mixed question of law and fact. Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008);

---

[90]Underdonk, 92 So.3d at 369; St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2011-KA-1598, 3/23/12.

Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

To establish that a defendant is a habitual felony offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Shelton, 621 So.2d 769 (La.1993); State v. Staggers, No. 03-KA-655, 2003 WL 22438958 at *5-*6 (La. App. 5th Cir. 2003) (citing State v. Davis, 829 So.2d 554 (La. App. 5th Cir. 2002)); State v. Warfield, No. 37,616-KA, 2003 WL 22439586 at *2-*3 (La. App. 2d Cir. 2003). Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction. Staggers, 2003 WL 22438958 at *6. Independent proof, such as matching fingerprints or other vital information, is required to show that a defendant is the same person identified in those records. State v. Walker, 795 So.2d 459, 463 (La. App. 5th Cir. 2001), writ denied, 826 So.2d 1115 (La. 2002).

In Louisiana, the State may introduce certified copies of bills of information, waiver of rights guilty plea forms when available, the docket masters, or minute entries to prove the existence of prior convictions. State v. Wilson, 956 So.2d 41, 52 (La. App. 4th Cir. 2007). The Louisiana Supreme Court has held that, upon presentation of sufficient proof of identity and of the existence of prior convictions, the burden shifts to the defendant to challenge the validity of the underlying convictions:

If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three <u>Boykin</u> rights.

<u>Shelton</u>, 621 So.2d at 779 (footnotes omitted).

Underdonk does not challenge his identity as the person convicted in the prior cases. Instead, he asserts that alleged infirmities in the taking of the prior pleas made the predicate offenses insufficient to support the multiple offender bill. Underdonk has never offered any "affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea[s]" in the predicate offenses. <u>Id</u>. Instead, Underdonk merely argued to the state trial court that certain language used by the state trial court at his prior guilty pleas regarding waiver of the right to counsel on appeal potentially conveys to the defendant that he no longer has a right to counsel at any future proceeding. The argument to the state trial court was simply that the language could be misleading. The state trial court dismissed the argument apparently as speculative and an improper assessment of the language used in the prior plea

colloquies.  The court also dismissed counsel's attempt to suggest that Underdonk should have been told that any conviction based on his pleas could be used to enhance a future sentence.

Underdonk has cited no federal law, and I can find none, requiring a state trial court to use any particular or different language at the prior guilty plea hearings or to inform a defendant that his plea may be used to enhance a sentence should he commit a crime in the future.  "[T]here is no fixed colloquy, no set sequence or number of questions and answers, no minimum length of the hearing, and no talismanic language that is required to be used in guilty-plea hearings.'" United States v. Williams, 20 F.3d 125, 133-34 & n.9 (5th Cir.), cert. denied, 513 U.S. 891 (citation and quotation omitted). Underdonk's questioning of the language used by the state trial court does not render his prior convictions unconstitutional or provide tangible evidence of any infirmity in the prior guilty plea proceedings.

The record shows that the State presented sufficient proof of Underdonk's status as a third felony offender.  At the multiple offender hearing, the State offered certified copies of the criminal records for Terrebonne Parish Criminal Case Nos. 317574, 406746[91] and 407990.[92]  Although the state court record does not contain copies of all

---

[91]This record also included pleas simultaneously entered in Case Nos.406747 and 407990.  St. Rec. Vol. 2 of 4, Hearing Transcript, p. 18, 9/22/10.  The convictions obtained on the same day were considered as one for purposes of the multiple bill proceedings in accordance with Louisiana law.

[92]St. Rec. Vol. 2 of 4, Hearing Transcript, pp. 12-16, 9/22/10; St. Rec. Vol. 1 of 4, Hearing Minutes, 9/22/10.

of the State's exhibits from that hearing, the record reflects that certified copies of the predicate case records were admitted at the hearing and reviewed by counsel.  Each of the exhibits included the bills of information, plea transcripts and Underdonk's fingerprints.  As Underdonk's counsel conceded at the hearing, those records also reflected that Underdonk was represented by counsel at the appropriate points in the prior proceedings.[93]

The State therefore presented nothing less than complete or perfect transcripts of the prior pleas along with the other necessary information to prove Underdonk to be a third offender.  Underdonk has failed to establish that the evidence was insufficient or that the denial of relief on this issue was contrary to or an unreasonable application of a federal law.  He is not entitled to relief on this issue.

(B)   Propriety of the Sentence

Underdonk alleges that his sentence for attempted aggravated rape as a multiple offender was excessive and disproportionate to the crime committed.  Underdonk bases his arguments on his assertions that the evidence of the attempted aggravated rape was insufficient and that the predicate offenses may have been insufficient to support the multiple offender adjudication, claims that I have already found to be meritless.

Nevertheless, to the extent Underdonk claims that the state trial court failed to comply with Louisiana's sentencing rules, he has not stated a cognizable federal habeas

---

[93]Id., at p. 25.

corpus claim.  See, e.g., Butler v. Cain, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ("... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus.").  Underdonk is not entitled to federal habeas relief on that point.

As a federal issue considered under the AEDPA standard, an excessive sentence claim presents a question of law.  Chatman v. Miller, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); Davis v. Cain, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); Jones v. Kaylo, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999). Therefore, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits.  Haynes, 825 F.2d at 923-24; see Turner v. Cain, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (Table, Text in Westlaw) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); accord Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F.2d at 923-24). A sentence within statutory limits will not be upset by a federal habeas court, unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 291-92 (1983).  "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of

'gross disproportionality,'" a court will consider (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the same offense in other jurisdictions.  Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)); United States v. Gray, 455 F. App'x 448, 449 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010), cert. denied, __ U.S. __, 131 S. Ct. 2470 (2011).

If the sentence is not "grossly disproportionate" in the first instance, however, the court's inquiry is finished. United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997), overruled in part on other grounds, United States v. O'Brien, 560 U.S. 218, 234-35 (2010) (as recognized in United States v. Johnson, 398 F. App'x 964, 968 (5th Cir. 2010)).  As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are sustained only in "extreme" or "extraordinary" cases.  Ewing v. California, 538 U.S. 11, 22 (2003) (quotation and citations omitted); Lockyer v. Andrade, 538 U.S. 63, 73, 77 (2003) (quotation and citations omitted).

Louisiana law provided at the time that a defendant like Underdonk convicted of attempted aggravated rape faced a term of imprisonment at hard labor of not less than ten (10) nor more than fifty (50) years without benefit of parole, probation or suspension of sentence. La. Rev. Stat. § 14:42(D)(1); La. Rev. Stat. § 14:27(D)(1)(a).  As a third felony offender, Underdonk's sentencing range was a minimum of two-thirds of the

longest possible sentence for his attempted aggravated rape conviction, or 33.33 years, and a maximum of not more than twice the longest possible sentence, or 100 years. La. Rev. Stat. § 15:529.1(A)(1)(b)(i) (West 2009).

Applying these provisions, the state trial court sentenced Underdonk to the minimum possible sentence as a third offender of 33.33 years at hard labor without benefit of parole, probation or suspension of sentence. This sentence is within the statutory range allowed under Louisiana law. Thus, Underdonk should only receive consideration of the proportionality of his sentence when compared with sentences imposed in similar cases.

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" Ewing, 538 U.S. at 23 (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).

In Underdonk's case, the state trial court considered several factors, including the "repugnant" nature of the crime and Underdonk's criminal background, including prior violent and drug related criminal activity.[94] The court noted Underdonk's lack of

---

[94]St. Rec. Vol. 2 of 3, Reasons for Sentencing, 12/13/10.

remorse for his conduct and for the victim.  The court also mentioned Underdonk's increasing propensity for violent crime despite prior attempts at rehabilitation.  These considerations formed the basis for the sentence imposed and are conclusions fully supported by the record.

Reported Louisiana case law establishes that Underdonk's sentence was <u>not</u> out of line with sentences imposed upon similarly situated defendants and is lower than sentences imposed upon first offenders for attempted aggravated rape under similar scenarios.  <u>See</u>, <u>e.g.</u>, <u>State v. Williams</u>, 149 So.3d 462, 470 (La. App. 2d Cir. 2014) (After jury trial, defendant received 35 years in prison as a fifth felony offender for attempted aggravated rape of his former, adult girlfriend after he broke into her home, chased her and struggled with her before pinning her down on a bed.); <u>State v. German</u>, 133 So.3d 179, 185 (La. App. 4th Cir. 2014) (following a jury trial, defendant received 45 years in prison as first offender for attempted aggravated rape of an adult victim after breaking into her apartment); <u>State v. Edgar</u>, 140 So.3d 22 (La. App. 4th Cir. 2013) (After jury trial, 40 years in prison as first offender for attempted aggravated rape of adult victim to whom he offered a ride.), <u>State v. Hollins</u>, 123 So.3d 840, 872-73 (La. App. 4th Cir. 2013) (After jury trial, defendant received 45 years in prison as a first offender for attempted aggravated rape of adult victim whom he detained while on duty as a police officer); <u>State v. Lewis</u>, No. 2012-KA-1616, 2013 WL 1858747, at *1 (La. App. 1st Cir. May 2, 2013) (Following a jury trial, defendant received 50 years in prison as a first offender for attempted aggravated rape of an adult victim whose trailer he

broke into.); <u>State v. Bazile</u>, 106 So.3d 560, 562 (La. App. 2d Cir. 2012) (Per a plea agreement, defendant received 40 years in prison as a first offender for attempted aggravated rape of adult victim whose home he broke into.).

Underdonk has not shown that his sentence was grossly disproportionate or unconstitutionally excessive under the circumstances of his case or in comparison with other similar cases in Louisiana.  The state courts' denial of relief on this issue was neither contrary to established Supreme Court case law nor an unreasonable application of Supreme Court precedent.  Underdonk is not entitled to relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Underdonk's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.

Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc)

(citing 28 U.S.C. § 636(b)(1)).[95]

New Orleans, Louisiana, this ____12th____ day of September, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[95]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.